UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE FURLINE,

Petitioner,                                     Case No. 2:21-cv-11449

v.                                              U.S DISTRICT COURT JUDGE
                                                GERSHWIN A. DRAIN

CHANDLER CHEEKS,

Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Terrance Furline (Petitioner), presently confined at the Thumb Correctional Facility in Lapeer, Michigan, is serving a sentence of 320 months to 50 years' imprisonment for his jury-based convictions of conducting a criminal enterprise, MICH. COMP. LAWS § 750.159i(1); third-degree arson, MICH. COMP. LAWS § 750.74; conspiracy to commit third-degree arson, MICH. COMP. LAWS § 750.157a; first-degree retail fraud, MICH. COMP. LAWS 750.356c; and conspiracy to commit first-degree retail fraud, MICH. COMP. LAWS § 750.356c(2); MICH. COMP. LAWS § 750.157a. Petitioner filed a *pro se* petition for a writ of habeas corpus seeking relief under 28 U.S.C. § 2254. The petition raises three claims concerning great weight and sufficiency of the evidence, denial of a severance motion, and sentencing. For

the reasons stated herein, the Court denies the petition for a writ of habeas corpus.

The Court also denies a certificate of appealability.

## I.    BACKGROUND

Petitioner's convictions arise from a fire and attempted theft that occurred on October 29, 2015, at the Home Depot in Kochville Township, Michigan.  A Saginaw County jury convicted Petitioner and his co-defendant, Alvin Jenkins, of conducting a criminal enterprise, third-degree arson, conspiracy to commit third-degree arson, first-degree retail fraud, and conspiracy to commit first-degree retail fraud. Petitioner and Jenkins were tried before the same jury and their cases were consolidated for appeal.  The Michigan Court of Appeals summarized the facts of the case in its opinion on direct appeal as follows:

> Defendants' convictions stem from a fire and attempted theft that occurred on October 29, 2015, at the Home Depot in Kochville Township, Saginaw, Michigan. The day before on October 28, there was a completed theft and fire at the Flint Township Home Depot. Defendants' [sic] devised to start a fire in the store as a distraction in order to steal and then return items without a receipt for store gift cards that were later sold to third parties for cash. An item taken from the Flint Township Home Depot was returned without a receipt to the Lowe's store in Burton, Michigan. Signatures were required for the returns. Multiple employees, who were working the morning shift at the Saginaw Home Depot on October 29, identified defendants in court. Defendants were also identified by loss prevention personnel from the two home improvement stores' video surveillance footage. Vehicles used in the heists were identified by the defendants' girlfriends as belonging to them. Items of clothing similar to that worn by the persons seen in video surveillance were seized from the respective girlfriends' residence where each defendant stayed. Jenkins's cellphone mapped his location as it moved to each store. Fire inspectors determined the cause

2

of the fires at the Flint and Saginaw Home Depot stores to be arson.
The fire at the Saginaw Home Depot in particular caused over a half
million dollars in damage.

*People v. Furline*, No. 335906, 2018 WL 3244129, at *1 (Mich. Ct. App. July 3,

2018).

The trial court sentenced Petitioner and Jenkins, as fourth habitual offenders,

MICH. COMP. LAWS § 769.12, to 320 months to 50 years' imprisonment for all

convictions.  Both Petitioner and Jenkins directly appealed to the Michigan Court

of Appeals.  Petitioner argued that (1) the verdict was against the great weight of the

evidence and there was insufficient evidence to convict, (2) the trial court abused its

discretion by denying the motion to sever, and (3) his sentence was unreasonable or

not proportionate.  The Michigan Court of Appeals consolidated the appeals, vacated

their convictions and sentence, and remanded for new trial on the basis that the trial

court abused its discretion by denying the severance motion.  *Furline*, 2018 WL

3244129, at *6, 15.  The Michigan Court of Appeals denied Petitioner's remaining

claims on the merits.

The State filed an application for leave to appeal in the Michigan Supreme

Court, which reversed the Michigan Court of Appeals' judgment and reinstated

Petitioner's and his co-defendant's convictions and sentence. *People v. Furline*, 505

Mich. 16; 949 N.W.2d 666 (2020).  On June 6, 2021, Petitioner filed the instant

petition raising the following claims:

I.      The offense is against the great weight of the evidence.

II.     Mr. Furline was denied a "fair trial" by the trial court's denial of his motion for separate trials.

III.    Mr. Furline's sentence was not proportionate or reasonable.

(ECF No. 1, PageID.5-8.)

Respondent filed an answer contending that the petition should be dismissed on the basis that the claims lack merit.  (ECF No. 9.)

## II.     STANDARD OF REVIEW

This habeas petition is reviewed under the standards of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  28 U.S.C. § 2254(d), as amended by the AEDPA, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court

4

on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

## III.   DISCUSSION

### A. Great Weight & Sufficiency of Evidence Claim

Petitioner first argues that the verdict went against the great weight of the evidence and the evidence was insufficient to support his convictions for conducting

5

a criminal enterprise, third-degree arson, conspiracy to commit third-degree arson, first-degree retail fraud, and conspiracy to commit first-degree retail fraud.

To the extent that Petitioner argues his verdict is against the great weight of the evidence, he does not state a federal constitutional claim.  Under Michigan law, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642 (1998) (internal quotation omitted). The grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude." *Id*. at 634, n. 8. A great weight of the evidence claim alleges an error of state law, which is not cognizable on habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law"); *Threatt v. Harry*, No. 18-1709, 2018 WL 6721774, *2 (6th Cir. Oct. 10, 2018) (holding that a claim that a conviction is against the great weight of the evidence does not present a federal constitutional question).

But a sufficiency of the evidence claim is cognizable on habeas review. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence must survive two layers of deference to groups who might view facts differently than a reviewing court on habeas review—the factfinder at trial and the state court on appellate review—as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–89.

When addressing a sufficiency of evidence challenge, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence."). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more").

The Michigan statute for conducting a criminal enterprise provides, in relevant part, that "[a] person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity." MICH. COMP. LAWS § 750.159i(1). The statute defines racketeering as, inter alia, "committing, attempting to commit, conspiring to commit, or aiding or abetting, soliciting, coercing, or

intimidating a person to commit an offense for financial gain . . . ." MICH. COMP.

LAWS § 750.159g(c). And a "pattern of racketeering activity," in turn, is defined as

> not less than 2 incidents of racketeering to which all of the following characteristics apply:
>
> (i) The incidents have the same or a substantially similar purpose, result, participant, victim, or method of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated acts.
>
> (ii) The incidents amount to or pose a threat of continued criminal activity.
>
> (iii) At least 1 of the incidents occurred within this state on or after the effective date of the amendatory act that added this section, and the last of the incidents occurred within 10 years after the commission of any prior incident, excluding any period of imprisonment served by a person engaging in the racketeering activity.

MICH. COMP. LAWS § 750.159f(c).

Michigan's retail-fraud statutes punish a person who "steals property of [a]

store that is offered for sale." MICH. COMP. LAWS 750.356c(1)(b); MICH. COMP.

LAWS § 750.356d(1)(b) and (4)(b). "In general, first-degree retail fraud is committed

if the property at issue "is offered for sale at a price of $1,000.00 or more," MICH.

COMP. LAWS § 750.356c(1)(b)." *People v. Kenny*, 332 Mich. App. 394, 397, 956

N.W.2d 562, 565 (2020). "[A] person 'steals' property . . . when he or she takes and

moves store property with the intent to steal the property[.]" *Id*. at 399.

Under Michigan law, a person commits third-degree arson when he or she

"[w]illfully or maliciously burns, damages, or destroys by fire or explosive any

building or structure, or its contents, regardless of whether it is occupied, unoccupied, or vacant at the time of the fire or explosion." MICH. COMP. LAWS § 750.74(1).

Petitioner was charged with first-degree retail fraud and third-degree arson under an aiding and abetting theory. To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must prove that (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. *Riley v. Berghuis*, 481 F. 3d 315, 322 (6th Cir. 2007) (citing *People v. Carines*, 460 Mich. 750, 757-58 (1999)).

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 600 N.W.2d 658, 663 (Mich. Ct. App. 1999). "[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt. In evaluating a 'mere presence' defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability." *Long v. Stovall*, 450 F. Supp. 2d 746, 754 (E.D. Mich. 2006). An aider and abettor who

is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal. Such acts may be silent and may not be overt but may still amount to more than 'mere' presence." *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id*.

Applying these standards, the Michigan Court of Appeals denied Petitioner relief on his claim, stating that:

> Furline first argues that there was insufficient evidence to establish a "pattern of racketeering" to convict him of conducting a criminal enterprise because there was no evidence that he participated in "2 incidents of racketeering" or that "[t]he incidents amount[ed] to or pose[d] a threat of continued criminal activity." MCL 750.159f(c)(ii). The record does support the argument that Furline was not involved in setting the fire at or removing items from the Flint Home Depot. However, there was evidence of his knowledge of the theft and subsequent participation in the activities underlying the fraudulent return of the stolen items. Furline's mother Doris Furline-Walker testified without contradiction that her son was merely present during the actual theft and arson at the Flint Home Depot. However her testimony to the contrary, there was a receipt bearing her son's name for the return of the item stolen from the Flint store, that indicated he participated in the crime after the fire to obtain financial gain. We agree that Walker maintained that she was the one who did the non-receipt return, even after the court showed her the exhibit of the October 28 Home Depot return receipt with her son's signature. Walker also

11

testified that she shared some of the profits of that return with her son. The jury could reasonably infer from Walker's testimony that Furline was involved in the Flint Home Depot offenses and that they were done for financial gain.

The argument of mere presence at the Saginaw Home Depot is also unavailing. Walker testified that Jenkins contacted her later on October 28 and asked if she wanted to go with him the next day to steal from the Saginaw Home Depot and she declined. However, the next day when Walker awakened, her son Furline was not home. Video surveillance, phone mapping evidence, and witness testimony showed Furline was at the Saginaw Home Depot with Jenkins. Evidence introduced at trial showed that once at the Saginaw Home Depot, Furline requested assistance from employee Mason Martinez with putting the most expensive power washer on a flatbed cart. After gathering other "big ticket items," the cart was passed to Jenkins who placed himself by the exit at the pro desk. This handoff between them was similar to the modus operandi at the Burton Lowe's store with the two faucets. Other evidence suggested Furline stayed behind in aisle 13 where employee Jacob Tyson noticed him just standing around and asked if he needed any help. Tyson testified that moments later Furline notified him of a fire in aisle 13. It is true that no one witnessed who started the fire and Walker testified that Jenkins admitted to her that he started the fire. However, when the fire started, video surveillance and employee Kathy Marciak's testimony placed Jenkins at the pro desk and Tyson's testimony placed Furline in aisle 13. Fire Captain Michael Comstock, Sergeant Lenny Jaskulka, and fire investigator Brandon Rossi all identified the origin of the fire to be in aisle 13. Further, there was no evidence of Furline being anywhere else in the store besides aisle 13 around the time the fire began, or of other persons besides him being in aisle 13 when the fire started. From this evidence, a jury could reasonably infer that Furline was more than merely present at the scene with Jenkins at the Saginaw Home Depot on October 29 and that he was involved in the events that took place there. Further, Furline's calling the arson at the Saginaw Home Depot a "diversionary tactic," no less makes it an offense committed for financial gain under MCL 750.159(g). The fire was set for the purpose of stealing items that defendants could turn around and return for cash.

* * *

> Viewed in a light most favorable to the prosecution, the evidence was sufficient from which a rational trier of fact could have found that Furline, acting in concert with Jenkins, entered the Flint and Saginaw Home Depots with the intent of starting fires to permanently deprive the stores of their property.

*Furline*, 2018 WL 3244129, at *3-4.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.  There was sufficient evidence to support the underlying convictions.  It is evident from the state-court record that Petitioner was involved in a retail-fraud scheme in which he and Jenkins would steal "big ticket items" from retail stores such as Home Depot and Lowe's, return the items for a merchandise credit, and then sell the cards for cash.  Witnesses testified that they saw Petitioner and Jenkins enter the Saginaw Home Depot location together on October 29, 2015.  (ECF No. 10-9, PageID.620, 625, 631.)  While in the store, the two men sought an employee's assistance with placing a power washer in a cart.  (*Id*. at PageID.616, 618.)  Petitioner and Jenkins then separated in the store. Jenkins took the cart with the power washer and other tools to the check-out area. (*Id*. at PageID.629.)  The cart contained items worth approximately $2,000.00. (*Id*. at PageID.631.)  An employee testified that he saw Petitioner in the insulation aisle (aisle 13) moments before the fire started.  (*Id*. at PageID.619-20.)  Although no one saw who started the fire, the employee testified that Petitioner alerted him to the fire and that Petitioner was the only person he saw in aisle 13. (*Id*. at PageID.620, 622.)

13

Further, the fire investigator identified the origin of the fire to be in aisle 13 and that the fire was started by an incendiary device taken to the insulation, such as a lighter. (ECF No. 10-9, PageID.655-57.)  The cashier testified that she saw Jenkins move the cart closer to the exit door after explaining that he could not pay for the items and was waiting for Petitioner to pay.  When the employee was alerted to the fire, she moved the cart away.  Jenkins then hurriedly exited the store.  (*Id*. at PageID.631.)

On the same day, prior to the attempted theft at the Saginaw Home Depot, Petitioner and Jenkins took faucets at a Lowe's in Burton and returned the items for a store credit.  A witness testified that security surveillance captured Jenkins walking into the store alone.  Jenkins then picked up two faucets from the plumbing section. Petitioner then met with Jenkins inside the store, took the faucets, and walked them to the return station to conduct a non-receipted return for which he received a store credit.  (ECF No. 10-9, PageID.640.)

A similar incident to the Saginaw theft occurred a day earlier at a Home Depot located in Flint Township.  Ms. Furline-Walker, Petitioner's mother, testified that she, Petitioner, and Jenkins drove to the Flint Home Depot for the purpose of stealing items from the store and returning them for store credit.  (ECF No. 10-11, PageID.739-41, 747.)  According to Ms. Furline-Walker, Jenkins set a fire in the store.  (*Id*. at PageID.741.)  A store employee testified that a woman alerted him to

a possible fire.  (*Id*. at PageID.732.)  The employee saw a flaming shopping cart behind the paint desk.  (*Id*. at PageID.732-733.)  Ms. Furline-Walker testified that she walked out with a table saw without paying for it.  (*Id*. at PageID.740.)  She and Jenkins placed the saw in his vehicle.  The trio then drove to another Home Depot store in Burton, Michigan to return the saw for store credit.  Ms. Furline-Walker testified that she made the return, sold the merchandise card for cash, and shared the proceeds with Petitioner and Jenkins.  However, a receipt dated October 28, 2015, established that Petitioner signed for the non-receipted return of the table saw in exchange for store credit. (ECF No. 10-10, PageID.701-702.)  The driver's license number associated with the return belonged to Petitioner.  (*Id*. at PageID.702.)

Considering these facts, Petitioner fails to show his convictions were based on insufficient evidence.  On at least 2 occasions, Petitioner assisted Jenkins in the commission of retail fraud for financial gain.  Although unclear whether Petitioner participated directly in the theft at the Flint location, the State presented compelling evidence that he participated after-the-fact by returning the stolen items for store credit.  With respect to the arson conviction, there was strong circumstantial evidence that Petitioner was responsible given his proximity to the fire's origin and being the only one present in that aisle.  The evidence further suggested that Petitioner used the fire as a diversionary tactic to commit retail fraud for financial gain, as Jenkins had done the day before.  The frequent pattern of retail fraud

suggests that such criminal activity would have continued.  Because the elements of the crimes charged were clearly established, Petitioner is not entitled to relief on this claim.

### B. Motion to Sever Trial Claim

Next, Petitioner argues that the trial court erred by denying his motion to sever the trial from that of his co-defendant.  On direct appeal, the Michigan Court of Appeals concluded that the trial court abused its discretion when denying Petitioner's severance motion because the co-defendant's defenses were mutually exclusive and prejudiced the trial.  *Furline*, 2018 WL 3244129, at *6.  The Michigan Supreme Court reversed the decision, holding that Petitioner's affidavit in support of the motion to sever failed to articulate concrete facts necessary to establish prejudice.  It ruled that "[i]n light of the failure of Furline's affidavit to articulate a prejudice theory that materialized at trial, we reject the Court of Appeals' belief that the trial court 'was fully apprised of the specifics of the codefendants' mutually exclusive defenses and the potential prejudice from one defendant being pitted against another in order to prove each's innocence.' " *Furline*, 505 Mich. at 23.  The Michigan Supreme Court further ruled that "any prejudice arguably conveyed by the motion and affidavit did not occur at trial." *Id*. at 27.

The Michigan Supreme Court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. "A petitioner seeking

habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden[,]" as generally, "joint trials are favored." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (citing *United States v. Horton*, 847 F.2d 313, 316 (6th Cir. 1988) and *United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir. 1984)). Because the Supreme Court has not recognized a specific right to separate trials, "a state trial court's refusal to grant severance only mandates habeas corpus relief when (1) the joint trial 'resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses . . . or the right to confrontation,' or (2) when the joint trial 'abridged the defendant's fundamental right to a fair trial as secured by the Fourteenth Amendment.' " *Turpin v. Kassulke*, 26 F.3d 1392, 1404 (6th Cir. 1992) (Feikens, D.J., concurring in part and dissenting in part) (quoting *Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979)); accord *Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). "[A] state trial court's alleged abuse of discretion [in denying severance], without more, is not a constitutional violation." *Stanford*, 266 F.3d at 459.

Habeas relief is not warranted on this claim. First, Petitioner's joint trial did not deprive him of a specific constitutional guarantee. Petitioner's motion to sever was premised on the concern that Jenkins' statements made in a recorded police interrogation would be admitted during trial. Jenkins told police that Petitioner set the fire in the Saginaw Home Depot and that Jenkins was not involved. (ECF No.

10-17, PageID.1253.)  Petitioner argued that because each co-defendant would claim that the other acted alone in setting the fire and attempting retail fraud, the defenses were mutually exclusive and antagonistic.  (*Id*.)   Petitioner further argued that severance would be necessary to prevent a situation where "[Jenkins] does not take the witness stand, but the Prosecutor introduces [Jenkins'] statement at trial which accuses [Petitioner] of setting the arson fire to provide cover to commit Retail Fraud," which would deny Petitioner of his right to confront Jenkins.  (*Id*. at PageID.1254-54.)  However, Petitioner's concerns did not come to pass as the State did not introduce Jenkins' recorded interrogation, nor did either testify during the trial.  Petitioner has not identified any other deprivation of a constitutional right caused by the state court's denial of the severance motion.   Thus, he has not been deprived of a constitutional guarantee.

Second, the trial court's denial of the severance motion did not result in a fundamentally unfair trial. As stated, none of the concerns identified in the motion to sever occurred.  Petitioner was provided the opportunity to present a complete defense and availed himself of the opportunity to thoroughly cross-examine each of the witnesses.  Petitioner has not identified any additional ways that the denial of the motion prejudiced the trial.   Rather, Petitioner attempts to reargue the evidence presented to the jury, which would require this Court to impermissibly reweigh the evidence or redetermine the credibility of the witnesses on habeas review.  *See*

*Matthews,* 319 F.3d at 788.  For these reasons, Petitioner is not entitled to habeas relief on this claim.

### C. Sentencing Claim

Lastly, Petitioner contends that his minimum sentence of 320 months' imprisonment is significantly disproportionate to his crimes because (1) his sentence was at the top of the guidelines; (2) his prior offenses were not severe; (3) his prior record did not justify the instant sentence; (4) he should have been sentenced differently than his ringleader co-defendant; (5) the arson offense was mis-scored; and (6) the retail fraud offense was not properly scored.  Respondent contends that the claim lacks merit.  The Court agrees.

The Michigan Court of Appeals denied relief on this claim.  In reaching its decision, the court of appeals determined that Petitioner was sentenced within the state sentencing guidelines such that the sentence was presumptively proportionate, and no unusual circumstances existed that would render his sentence disproportionate.  *Furline*, 2018 WL 3244129, at *8.

The Michigan Court of Appeals' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The United States Constitution does not require that sentences be proportionate. In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a plurality of the United States Supreme Court concluded that the Eighth Amendment does not contain a

requirement of strict proportionality between a crime and sentence. Rather, the Eighth Amendment forbids "only extreme sentences that are grossly disproportionate to the crime." *Id*. at 1001 (internal quotation marks omitted).

Furthermore, a sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000). Courts reviewing Eighth Amendment proportionality must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473-74 (6th Cir. 2003) (citing *Harmelin*, 501 U.S. at 999). "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.' " *Cowherd v. Million*, 260 F. App'x. 781, 785 (6th Cir. 2008) (quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245 (1949).

Moreover, federal courts generally do not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole. *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Successful challenges to

the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

In the present case, Petitioner's sentence of 320 months to 50 years' in prison was within the statutory limits for the offenses.  Petitioner's minimum sentence of 320 months to 50 years' years was within the sentencing guidelines range of 99 to 320 months.   Petitioner concedes that his sentence is within the applicable sentencing guidelines range and within the statutory maximum for a fourth habitual offender.  (ECF No. 1, PageID.49); *see* MICH. COMP. LAWS §§ 750.159(i)(1), 769.12. "In Michigan, sentences within a correctly scored guidelines range are presumptively proportionate." *Hastings v. Yukins*, 194 F. Supp. 2d 659, 673-674 (E.D. Mich. 2002) (citing *People v. Bailey*, 218 Mich. App. 645, 647; 554 N. W. 2d 391 (1996)). Thus, the Court concludes that Petitioner's sentence of 320 months to 50 years' years in prison was not grossly disproportionate so as to entitle him to habeas relief.  Therefore, the petition for writ of habeas corpus is denied.

### IV.   CERTIFICATE OF APPEALABILITY

The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, an inmate must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues

presented were adequate to deserve encouragement to proceed further. S*lack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*. at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. Nor may Petitioner have leave to appeal *in forma pauperis* because such an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.    CONCLUSION

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS SO ORDERED**.

Dated:  November 29, 2023                    /s/Gershwin A. Drain
                                              GERSHWIN A. DRAIN
                                              United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on November 29, 2023, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager